## APPEAL OF D. A. FISHER, INC.

Docket No. 4128.   Submitted July 15, 1925.   Decided January 16, 1926.

*O. R. Ewing, C. P. A.*, for the taxpayer.
*J. Arthur Adams, Esq.*, for the Commissioner.

Before LITTLETON, SMITH, and TRUSSELL.

This is an appeal from the determination of a deficiency in income and profits tax for the calendar year 1918 in the amount of $2,616.68, arising from the denial of taxpayer's claim that it was entitled to classification as a personal service corporation.

### FINDINGS OF FACT.

Taxpayer is a Tennessee corporation with principal office at Memphis, engaged in business as an insurance agency, writing all kinds of insurance, except life. The agency was originally started in 1867 by P. A. Fisher. Upon his death the business was carried on by his son, D. A. Fisher. On January 1, 1914, D. A. Fisher incorporated the agency for $50,000, the stock having a par value of $10 per share. Good will was charged with this account and no cash or tangible assets were paid in for the stock. At that time a portion of the stock was issued to D. A. Fisher and to others who were regularly and actively engaged in the business, the remainder being held in the treasury. Shortly after incorporation the taxpayer acquired for 3,000 shares of stock and $300 in cash the insurance agency of Clyde Richert, which possessed no tangible assets.

The stock of the taxpayer was owned and salaries were paid to the stockholders during the year 1918, as follows:

| | Salary. |
|---|---|
| D. A. Fisher, president, 26,210 shares | $10,000 |
| Allan Fisher, vice president, 14,000 shares | 3,150 |
| Clyde Richert, secretary, 3,000 shares | 3,300 |
| Bessie Gardner, 875 shares | 1,590 |

All of the stockholders were regularly engaged in the active conduct of the taxpayer's business and devoted their entire time thereto. The services rendered by the corporation consisted of soliciting risks, writing and delivering policies, assuming responsibility for the collection of premiums from the insured, collecting the premiums and remitting them to the insurance companies, less the commissions allowed.

The assets and liabilities at the beginning and end of the year 1918 were as follows:

|  | Jan. 1, 1918. | Dec. 31, 1918. |
|---|---|---|
| **ASSETS.** | | |
| Cash on hand | $609.97 | $183.74 |
| Notes receivable trade | 1,256.60 | 10,207.22 |
| Accounts receivable trade | 56,650.12 | 69,417.81 |
| Liberty bonds | 206.56 | 1,000.00 |
| Advances to employees | 751.05 | ------- |
| Advances to others | 50.00 | 50.00 |
| Furniture and fixtures | 5,262.91 | 5,297.62 |
| Printing equipment | 522.69 | 273.69 |
| Agency plant—good will | 55,000.00 | 55,000.00 |
| Books out on balance | 1.00 | 531.03 |
| Fire-protection inventory | 997.57 | 1,844.09 |
| | 120,310.90 | 143,805.26 |
| | [121,308.47] | [143,805.20] |
| **LIABILITIES.** | | |
| Notes payable | 4,700.00 | 1,332.08 |
| Accounts payable—company's | 46,984.16 | 66,226.10 |
| Accounts payable—others | 4,317.80 | 2,736.66 |
| Reserve for depreciation | 526.29 | 526.29 |
| Capital stock | 35,900.00 | 35,900.00 |
| Surplus | 27,853.53 | 27,853.53 |
| Current profit and loss | 29.12 | 9,230.60 |
| | 120,310.90 | 143,805.26 |

Taxpayer was allowed a period of time by the various insurance companies, beyond the time fixed for the payment to it of the premiums by the insured, in which to remit premiums for which it had assumed liability. During the taxable year the premiums paid by the taxpayer before collection from the insured were negligible.

During the taxable year, for the purpose of assisting in the fire-protection campaign, and in order to interest property owners generally in the installation of appliances for protection against fire, taxpayer carried a small supply of fire extinguishers, hose, etc., which it sold. It also took orders for fire doors which it ordered shipped direct to the purchaser. The purchaser made payment direct to the shipper and, in addition, paid taxpayer a service charge of 5 per cent of the cost of such doors. The taxpayer's purpose in having a fire-protection department during the taxable year was to assist in popularizing the fire-protection campaign and to interest its clients and others in the installation of fire-protection apparatus, especially fire doors, which were not sold or carried in stock by any merchant in that territory.

The income and deductions for the taxable year were as follows:

Gross income:

| | | |
|---|---|---|
| Gross sales, fire-protection department | $44,827.29 | |
| Less cost of goods sold | 33,336.80 | |
| | 11,490.49 | |
| Miscellaneous income | 167.21 | |
| Commissions, fire insurance | 38,009.37 | |
| Commissions, casualty insurance | 10,292.73 | |
| Commissions, marine insurance | 1,877.02 | |
| | | $61,836.82 |

Deductions:

| | | |
|---|---:|---:|
| Ordinary and necessary expenses | $33,343.56 | |
| Compensation of members | 16,300.00 | |
| Interest | 555.73 | |
| Taxes | 108.56 | |
| Debts ascertained to be worthless | 1,438.12 | |
| Exhaustion | 588.62 | |
| | | $52,334.59 |
| Net income | | 9,502.23 |

The income of taxpayer was due primarily to the activities of its stockholders. Capital was a material income-producing factor.

## DECISION.

The determination of the Commissioner is approved.

## APPEAL OF HOUSEAL-SIMONS AGENCY, INC.

Docket No. 3418.   Submitted June 24, 1925.   Decided January 16, 1926.

*Oscar W. Underwood, Jr., Esq.*, for the taxpayer.
*J. Arthur Adams, Esq.*, for the Commissioner.

### Before STERNHAGEN, LANSDON, and LOVE.

This appeal is from the determination of a deficiency in income taxes of $897.22 for the year 1919, and $46.88 for 1920.

The taxpayer assigned seven errors, all of which are involved in and may be epitomized into the one assignment—that the Commissioner erred in refusing personal service classification to the taxpayer for the years in question.

### FINDINGS OF FACT.

The taxpayer corporation is the successor, through several changes of names, to Bailey-Jones Real Estate & Insurance Co., with an authorized capital stock of $15,000, with 150 shares of stock.

In 1918, W. H. Oldham purchased from the stockholders all the stock of the Bailey-Jones Real Estate & Insurance Co., at $70 per share, with the understanding and agreement that F. L. Kendrick, H. B. Thompson, and W. B. Houseal would take all of said stock off his hands at $80 per share and pay him therefor out of the profits of the business.

In pursuance of that agreement and as of January 1, 1919, he sold and assigned said stock as follows:

| | Shares. |
|---|---:|
| To Kendrick | 45 |
| To Thompson | 18¾ |
| To Houseal | 56¼ |